IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICKEY D. CHEATHAM, § | | |
| TDCJ-CID NO. 588163, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | | |
| § | CIVIL ACTION NO. H-05-1899 | |
| DOUG DRETKE, Director, § | | |
| Texas Department of Criminal § | | |
| Justice Correctional § | | |
| Institutions Division, § | | |
| § | | |
| Respondent. § | | |

**MEMORANDUM OPINION AND ORDER**

Rickey D. Cheatham, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), proceeding pro se and in forma pauperis, filed a Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) challenging the result of a prison disciplinary proceeding. Pending before the court is Respondent Dretke's Motion for Summary Judgment with Brief in Support (Docket Entry No. 4), to which petitioner has filed a Response (Docket Entry No. 6). For the reasons discussed below, the court will grant the motion for summary judgment and deny Cheatham's petition for a writ of habeas corpus.

## I. Factual and Procedural Background

Cheatham is concurrently serving sentences of thirty-five years on each of five robbery convictions, and twenty years on a forgery conviction.[1] He does not, however, attack the validity of any state court convictions in this petition. Instead, he challenges the outcome of a disciplinary proceeding, TDCJ-CID case #20050175540.[2] On March 2, 2005, a disciplinary hearing was held, and the disciplinary hearing officer found Cheatham guilty of a TDCJ-CID rules violation. Cheatham received the following punishment: (1) forty-five days loss of commissary privileges; (2) suspension of contact visits through July 2, 2005; (3) forty-five days of cell restriction; (3) fifteen days in solitary confinement; (4) a reduction in line class from S2 to L1; and (5) a loss of 180 days of good-time credit.[3] Cheatham appealed the decision, which was upheld by the prison administration.

Cheatham asserts that he was denied due process during the disciplinary action. He also claims that there was insufficient evidence to prove his guilt.[4]

---

[1]Respondent's Motion for Summary Judgment, Docket Entry No. 4, Exhibit A.

[2]Petition for Writ of Habeas Corpus, Docket Entry No. 1, p. 2.

[3]Disciplinary Hearing Records, Docket Entry No. 5.

[4]Petition for Writ of Habeas Corpus, Docket Entry No. 1, pp. 7-8.

## II. Standard of Review

**A. Summary Judgment**

A court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Material facts are facts that may "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment bears the initial burden of proving the absence of any genuine issues of material fact. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). Once the movant has met this burden, the non-movant must establish that there is a genuine issue for trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). If the non-movant is unable to meet this burden, the motion for summary judgment will be granted. FED. R. CIV. P. 56(c). When considering a summary judgment motion, the court resolves any doubts and draws any inferences in favor of the nonmoving party. Hunt v. Cromartie, 119 S.Ct. 1545, 1551-52 (1999).

In reviewing a habeas case, the court should construe liberally the petitions of prisoners seeking habeas relief. See Haines v. Kerner, 92 S.Ct. 594 (1972) (per curiam). Procedural rules must give way at times because of the "unique circumstance of incarceration." McNeil v. United States, 113 S.Ct. 1980, 1984 (1993) (citing Houston v. Lack, 108 S.Ct. 2379 (1988)). Overall, the court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." Haines, 92 S.Ct. at 596.

**B.   AEDPA**

The federal courts' power to issue writs of habeas corpus to prisoners challenging state convictions is subject to relevant portions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Congress enacted the statute to prevent "retrials" of state criminal actions, Bell v. Cone, 122 S.Ct. 1843, 1849 (2002), and "'to further the principles of comity, finality, and federalism.'" Woodford v. Garceau, 123 S.Ct. 1398, 1401 (2003) (quoting Williams v. Taylor, 120 S.Ct. 1479, 1490 (2000)).

Federal district courts may grant habeas relief to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Malchi v. Thaler, 211 F.3d 953, 957 (5th Cir. 2000) (quoting Orellana v. Kyle, 65 F.3d 29, 31 (5th Cir. 1995)). The court shall not grant habeas relief unless the state prisoner has exhausted the

remedies available in the courts of the state; there is an absence of state corrective process; or the state corrective process does not protect effectively the rights of the state prisoner. Id. § 2254(b)(1).

### III. Analysis

Cheatham challenges the results of a prison disciplinary proceeding. Prison disciplinary proceedings differ from criminal prosecutions, and prisoners in such proceedings are not entitled to the rights due a defendant in a criminal trial. Wolff v. McDonnell, 94 S.Ct. 2963, 2975 (1974). Because Cheatham is a prisoner, his due process rights are limited.

Cheatham's challenges regarding temporary deprivation of privileges have no basis in law because such punishments merely change the condition of his confinement and are not actionable in federal court. See Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997 (citing Sandin v. Conner, 115 S.Ct. 2293, 2297 (1995)). A prisoner does not have many of the rights and privileges that a free citizen enjoys. Madison, 104 F.3d at 767. In some instances the state may create liberty interests that are protected by the Due Process Clause. Sandin, 115 S.Ct. at 2300. These interests, however, are limited to disciplinary actions which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

Cheatham's forty-five-day loss of commissary privileges and forty-five-day cell restriction do not implicate any due process concerns. Malchi, 211 F.3d at 958. The suspension of contact visits through July 2, 2005, is not actionable because it is a temporary condition of confinement that is not subject to habeas review. Id. His temporary placement in solitary confinement cannot be challenged because it did not impose an atypical hardship in relation to the ordinary incidents of prison life, nor does it affect the fact or duration of his confinement. See Sandin, 115 S.Ct. at 2300. See also Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam); Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) ("[I]t is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status.").

Cheatham's demotion in line class, while ostensibly preventing him from earning good-time credits, does not establish a claim because (1) he does not have a constitutionally cognizable "right" to a particular time-earning classification; and (2) the affect of the classification on his release date is too attenuated to be considered a deprivation of a liberty interest. Malchi, 211 F.3d at 959. See also Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) (noting that losing the ability to accrue good-time credits does not inevitably affect the length of

the sentence). Moreover, as will be explained below, Cheatham's good-time credits do not directly affect the amount of time he must serve.

Under the Texas statute in place at the time Cheatham committed his offense there is a protected liberty interest in mandatory supervision for good-time credits actually earned, but only if a prisoner is eligible for release on mandatory supervision. Malchi, 211 F.3d at 957-58. Under Texas law some inmates may be eligible for release under mandatory supervision if their good-time credits and credits for calendar time served equals their maximum sentence. Malchi, 211 F.3d at 957. Since 1977, good-time credits affect the length of a given sentence that an inmate must serve only if he has been convicted of certain offenses. See TEX. CIV. STAT. art. 6181-1, § 4 (Vernon 1977) ("Good conduct time applies only to eligibility for parole or mandatory supervision . . . and shall not otherwise affect the inmate's term.") (current version at TEX. GOVT. CODE ANN. § 498.003(a) (Vernon 2000)).

Cheatham's loss of earned good-time credit is not actionable because he is not eligible for mandatory supervision release. See Arnold v. Cockrell, 306 F.3d 277, 278 (5th Cir. 2002) (per curiam). Cheatham is serving time for five second-degree felony offenses of robbery and for the offense of forgery. In determining a Texas inmate's eligibility for supervised release or parole, the

governing statute is the one that was in effect at the time of the offense. Malchi, 211 F.3d at 958. During the time Cheatham committed the offenses, from 1990 to 1991, an inmate who had been found guilty of the second-degree felony of robbery could not be released under mandatory supervision. TEX. PEN. CODE ANN. § 29.02; TEX. CODE CRIM. PROC art. 42.18 § 8(c)(1) (stating that a prisoner "may not be released to mandatory supervision . . . if the person is serving a sentence for . . . a second degree felony under Section 29.02, Penal Code (Robbery)") (current version at TEX. GOVT. CODE ANN. § 508.149(a)(11)). Consequently, any loss of good time that might have occurred as a result of the disciplinary hearing would not affect the duration of Cheatham's incarceration and, therefore, would not implicate any due process concerns.

Although Cheatham has not yet requested a Certificate of Appealability (COA) on the claims denied in this Memorandum Opinion and Order, the court may deny a COA sua sponte. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam). To obtain a COA Cheatham must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 124 S.Ct. 2562, 2569 (2004). To make such a showing Cheatham must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the issues presented are adequate to deserve encouragement to proceed further. Tennard, 124 S.Ct. at 2569. For the reasons

stated in this Memorandum Opinion and Order, Cheatham has not made a substantial showing of the denial of a constitutional right.

### IV. Conclusion and Order

The court **ORDERS** the following:

1. Respondent Dretke's Motion for Summary Judgment (Docket Entry No. 4) is **GRANTED**.

2. Petitioner Cheatham's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

3. A certificate of appealability is **DENIED**.

4. The Clerk will provide a copy of this Memorandum Opinion and Order to the petitioner, and will provide a copy of the petition and this Memorandum Opinion and Order to the respondent and the attorney general by providing one copy to the Attorney General of the State of Texas.

**SIGNED** at Houston, Texas, on this 6th day of October, 2005.

SIM LAKE
UNITED STATES DISTRICT JUDGE